UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REZA TIRGARI,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>REZA KAZEMIPOUR AND 1792 PARTNERS INC.,<br><br>　　　　　　　　　Defendants. | Case No.: 22-CV-541-CAB-DDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[Doc. No. 16]** |

This matter is before the Court on Defendant Reza Kazemipour's motion to dismiss the second amended complaint ("SAC"). As discussed below, the motion is **GRANTED**.

## I.     PROCEDURAL BACKGROUND

On April 19, 2022, Plaintiff Reza Tirgari filed a complaint against Reza Kazemipour ("Kazemipour"), 1792 Partners, Inc. ("1792 Partners"), 1792 Partners General Partnership ("1792GP") alleging nine causes of action. [Doc. No. 1]. Each cause of action in Plaintiff's original complaint was a state law claim except the ninth cause of action, which was brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The three defendants filed a joint motion to dismiss the original complaint for failure to state a claim and lack of subject matter jurisdiction. [Doc. No. 5]. Plaintiff then filed his first amended complaint ("FAC"), adding four more state law claims

1

[Doc. No. 6], and Defendants again moved to dismiss the FAC for failure to state a claim. [Doc. No. 9]. Although Plaintiff filed a response in opposition to Defendants' motion to dismiss the FAC, after discovering that 1792 Partners is a suspended corporation and 1792GP is a nonexistent entity, the parties filed a joint motion for Plaintiff to file a second amended complaint ("SAC"), which the Court granted. [Doc. No. 15.]

Plaintiff filed the SAC on September 7, 2022. [Doc. No. 14]. The SAC dropped 1792GP as a defendant and increased the number of causes of action to sixteen, including a new federal claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*. Kazemipour now moves to dismiss the SAC.

## II.   ALLEGATIONS IN THE SAC

The SAC is over 100 pages long and filled with redundancies.  In summary, Plaintiff alleges Kazemipour convinced Plaintiff to invest thousands of dollars into various business ventures, and Kazemipour allegedly used the funds received from Plaintiff for personal expenses rather than for the agreed upon investments. [MTD at 3; Pl. Resp. at 2].

During the summer of 2018, Plaintiff met Kazemipour. [SAC ¶ 11]. Kazemipour and Plaintiff established an informal friendship and a professional relationship. Kazemipour formed 1792 Partners, an investment advising company, in March 2019. 1792 Partners was suspended in October 2020. [SAC ¶ 3]. The relationship between Plaintiff, Kazemipour, and 1792 Partners is quite convoluted and spans multiple years, but essentially involves Plaintiff and Kazemipour entering into various investment agreements together, with Kazemipour allegedly acting in his capacity as 1792 Partners Chief Executive Officer ("CEO") for most of the agreements.[1]

In February 2019, Plaintiff and Kazemipour incorporated R2 Ventures, Inc. ("R2 Ventures") to establish a joint venture where both parties were to invest into "agreed upon" companies and technologies. [SAC ¶ 7]. Through R2 Ventures, Plaintiff and Kazemipour

---

[1] Not all of the agreements between Plaintiff and Kazemipour will be referred to here, as they are not essential the Court's ultimate conclusion on the federal claims.

agreed to invest in and develop two software applications ("apps") for which Plaintiff allegedly created the detailed plans, procedures, and processes. [SAC ¶ 23]. Kazemipour allegedly convinced Plaintiff to provide this information to both Kazemipour and a non-party app development company. [SAC ¶ 25]. Kazemipour repeatedly reached out to Plaintiff and others via his 1792 Partners email address regarding investment or participation in the app development process. [SAC ¶¶ 169-173, 175-186]. As a result of Kazemipour's communications regarding the apps, Plaintiff was allegedly convinced to invest $240,600 into the development of these apps. [SAC ¶ 46]. The two apps have since been created and posted by 1792 Partners on the Apple App Store. [SAC ¶ 30, SAC Exhibits G & H]. However, Plaintiff has not had access to the information he created, nor has he received any of the money acquired by 1792 Partners for the existence of the apps on the app store. [SAC ¶¶ 399, 402-403].

Plaintiff and Kazemipour used two accounts through which to conduct general R2 Ventures business: (1) the "Joint Investment Account," a bank account pre-owned by Plaintiff; and (2) the "Joint Amex Account," a credit card account opened by Plaintiff specifically for R2 Ventures (collectively referred to as "the accounts"). [SAC ¶¶ 7, 35]. Plaintiff added Kazemipour as an authorized user for both accounts. [SAC ¶ 35]. Between the months of March 2019-October 2021, Kazemipour and Plaintiff deposited and withdrew thousands of dollars from the accounts for supposed business-related costs. The accounts were also used as an avenue for Plaintiff to make personal loans to Kazemipour. [SAC ¶¶ 98, 110].

### III. PLAINTIFF'S FEDERAL CLAIMS

In Plaintiff's fifteenth claim for relief under RICO, Plaintiff alleges that Kazemipour engaged in a pattern of racketeering activity via wire fraud and money laundering from 2019-2021 through 1792 Partners, causing a loss of property of more than $10,000 from the money taken out of the accounts by Kazemipour. [SAC ¶¶ 376-392]. Specifically, he alleges Kazemipour engaged in thirty-seven acts of racketeering activity over the period of March 2019 – December 2021 through 1792 Partners. [SAC ¶¶ 167-240]. Nineteen of these

acts were alleged wire fraud under 18 U.S.C. § 1343. [SAC ¶¶ 167-186]. In each alleged act of wire fraud, Kazemipour allegedly either (1) used his 1792 Partners email address to defraud Plaintiff and others into investing in the apps [SAC ¶¶ 169-173, 175-180, 186]; (2) used his 1792 Partners email to send Plaintiff other investment agreements or discuss transfer of funds into the accounts [SAC ¶¶ 178, 181-185]; (3) used his personal email to convince Plaintiff to invest into the apps [SAC ¶¶ 167-168]; or (4) used an email associated with the apps to convince Plaintiff and another to invest in the apps [SAC ¶ 174]. The remaining eighteen acts were alleged money laundering under 18 U.S.C. § 1957. [SAC ¶¶ 189-242]. In each act of alleged money laundering, Kazemipour allegedly withdrew or transferred funds from the R2 Ventures accounts to spend the funds on personal use, including international travel and his daughter's college tuition, resulting in a $750,638 loss to Plaintiff. [SAC ¶ 149].

In his sixteenth claim for relief under DTSA, Plaintiff alleges that Kazemipour and 1792 Partners misappropriated Plaintiff's "trade secrets" when Defendants and the non-party app development company took his information related to the apps and later published the apps on the app store.

Kazemipour asks the Court to dismiss Plaintiff's Fourth, Sixth, Ninth, Fifteenth, and Sixteenth causes of action. [Notice of MTD at 2]. Kazemipour argues that (1) the SAC does not state facts sufficient to constitute a plausible claim for relief against Kazemipour under any of the causes of action specified; and (2) upon dismissal of Plaintiff's RICO and DTSA claims, original federal jurisdiction will no longer exist under 28 U.S.C. § 1331. [Notice of MTD at 2]. For the reasons below, the MTD is **GRANTED**.

### IV.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court evaluates whether a complaint states a recognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than

an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court need not accept as true "legal conclusions" contained in the complaint, *id.*, or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences*," Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

A complaint also must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). To survive a motion to dismiss, "'allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

## V. DISCUSSION

Although Kazemipour moves to dismiss several of the state law claims in addition to the federal claims, the Court addresses the federal claims first, because when federal claims are dismissed at an early stage, it is generally appropriate for a district court to decline supplemental jurisdiction over any remaining state law claims.

### A.     RICO – Claim 15

The SAC asserts a RICO claim against Kazemipour alone under 18 U.S.C. § 1962(c). Section 1962(c) states that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). To prove a claim under § 1962(c), the complainant must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). The SAC states that Kazemipour engaged in a pattern of racketeering activity under § 1962(c) as the managing director, founder, and CEO of 1792 Partners. [SAC ¶ 377]. In the motion to dismiss, Kazemipour only addresses the sufficiency of Plaintiff's pleadings with respect to "pattern" and "predicate violations." As such, the Court will start with the "pattern" requirement.

Plaintiff alleges that Kazemipour engaged in a "pattern" of racketeering activity over a two-year period when he committed thirty-seven acts of both wire fraud and money laundering against Plaintiff. Kazemipour argues that the thirty-seven acts alleged cannot constitute a "pattern" under RICO because it does not meet the continuity requirement. Specifically, Kazemipour argues that the thirty-seven acts alleged cannot be considered continuous to constitute a pattern because this is a single fraud with a single victim. [MTD at 13-14]. The Court agrees.

A "pattern" of racketeering activity is established when a RICO defendant engages in two or more related racketeering activities within a 10-year period. 18 U.S.C. § 1961(5). To sufficiently prove a pattern of racketeering activity, the acts must be "related" and "continuous." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *see also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). Kazemipour focuses on the continuity requirement in his motion. The Ninth Circuit has found that continuity does not exist where numerous related predicate acts arose from a single, isolated event. *Durning v. Citibank,*

*Int'l*, 990 F.2d 1133, 1139 (9th Cir. 1993). Additionally, there is no pattern under RICO where the plaintiff was the single victim of an alleged fraud. *Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir. 1988); *See California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987).

There are two kinds of continuity that can meet the RICO "pattern" requirement, closed-ended and open-ended. Kazemipour argues that the SAC alleges neither type.

### 1.     Closed-ended continuity

Closed-ended continuity is a closed period of repeated unlawful conduct. *See H.J. Inc.*, 492 U.S. at 239. Ninth Circuit courts look to various factors to assess whether RICO plaintiffs have sufficiently pled a close-ended pattern of racketeering activity. "These factors include: (1) the number and variety or predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries." *NSI Tech. Servs. Corp. v. Nat'l Aeronautics and Space Admin.*, Case No. 95-20559, 1996 WL 263646, at *3 (N.D. Cal April 13, 1996). A single plan with a single purpose and effect does not constitute a pattern of racketeering activity. *Id.*

Here, the SAC alleges there are two kinds of predicate acts, wire fraud and money laundering, both of which are legitimate acts of racketeering under § 1961(1). The SAC fails, however, to allege separate criminal schemes against multiple victims. Each "victim" other than Plaintiff mentioned in the SAC is only mentioned as having been a victim of wire fraud, not money laundering.  Plaintiff alleges eight victims other than himself and R2 Ventures who were subject to Kazemipour's wire fraud: Samir Haj, Michael Cameron, Patrick Dillon, Zafar Consulting Group, Terri Ross, Aesthetics and Plastic Surgery, Sheila Nazarian, and Thinglogix [SAC ¶¶ 170-177, 186]. Each alleged victim was emailed by Kazemipour regarding investment into the two apps or investment into the R2 Ventures accounts, presumably for the apps. In each act of wire fraud that involves a person other than Plaintiff, Kazemipour was attempting to get them involved in the development process for the apps. This is only one scheme. Although the Ninth Circuit has found that "it is not

necessary to show more than one fraudulent scheme or criminal episode to establish a pattern," the instance case is distinguishable. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987). In *Sun Savings,* the Ninth Circuit found that one scheme was enough where the predicate acts allegedly covered up kickbacks and favors given to the RICO defendant. *Sun Sav.*, 825 F.2d at 194. The instance case does not indicate the covering up of any alleged illegal activity. Specifically, the Court does not find that Plaintiff adequately pled a pattern of wire fraud committed by Kazemipour against multiple victims. The apps were created and listed on the app store, as evidenced by Plaintiff's exhibits to the SAC. If the SAC alleges that the other "victims" were convinced to participate in the app development process of apps that were eventually created, Plaintiff has not demonstrated that Kazemipour's actions constitute unlawful activity to satisfy RICO.

As for Plaintiff's allegations of money laundering, Plaintiff does not allege any victims other than himself.[2] For all these reasons, the Court declines to find closed-ended continuity.

## 2. Open-ended continuity

Open-ended continuity includes past conduct that projects into the future with a threat of repetition. *H.J. Inc.,* 492 U.S. at 239. In the context of open-ended continuity, a criminal scheme with a singular goal poses no threat of continuing criminal activity once that goal is achieved. Open-ended continuity can exist if a RICO defendant's activity was a regular way of "conducting ongoing business." *Id.* at 250; *See Ticor Title Ins. Co. v. Fla.*, 937 F.2d 447, 450 (9th Cir. 1991) (pattern existed where realty company forged tax lien releases three times and showed no intention of stopping the forgeries).

---

[2] Only one other person, Samir Haj, is alleged to have invested money into the joint investment accounts for the purposes of the apps. [SAC ¶ 48, 166]. However, this person is only mentioned in reference to being defrauded by Kazemipour through wire. Samir Haj's transactions in the accounts are not listed in the allegations of money laundering, and it is not evident from the pleadings that Haj did not receive a return on his investment.

The Court does not find that there is open-ended continuity. Defendant points the Court to the *McGowan* case, where the district court found that thirty-eight alleged acts of wire fraud did not pose a threat of continuing activity where defendant Harvey Weinstein's efforts to suppress allegations about him in plaintiff Rose McGowan's book was his sole goal in committing those acts. *McGowan v. Weinstein*, 562 F. Supp. 3d 744 (C.D. Cal. 2021). Similarly here, Plaintiff's SAC does not demonstrate that Kazemipour will continue to defraud others. As previously mentioned, Plaintiff has merely demonstrated that each allegation of wire fraud against the other victims was to obtain investment in the successful app development process, and for no other investment purpose. All thirty-seven acts alleged in this instance do not demonstrate anything other than the singular goal of defrauding Plaintiff of his money, which Kazemipour has supposedly achieved.

Additionally, the SAC fails to allege that Kazemipour's actions were done in the "regular course of business." In *Ikuno v. Yip*, 912 F.2d 306 (9th Cir. 1990), the Ninth Circuit found that a pattern existed when a lawyer filed two false annual reports for a known phantom corporation that was inducing others to invest into its company, and it was likely he would have continued to file false annual reports until the phantom corporation was finally disbanded. *Ikuno*, 912 F.2d at 309. In *Ticor Title Ins. Co.*, the Ninth Circuit found that three instances of forgery over a thirteenth-month period constituted a pattern because the forgeries were conducted in defendant's "regular way of conducting business." *Ticor Title Ins. Co.*, 937 F.2d at 450. Here, Plaintiff has not adequately pled that this was Kazemipour's "regular way of conducting business." Plaintiff argues that Kazemipour committed a pattern of predicate acts under RICO through the 1792 Partners entity. However, the development of the apps, which is alleged to be the subject of most instances of wire fraud alleged by Plaintiff, was an R2 Ventures investment pursuit. Additionally, all money allegedly laundered was solely done through the R2 Ventures accounts.

It is for these reasons the Court finds that there is no pattern under RICO. Plaintiff has not pled multiple victims were defrauded, nor has he pled that Kazemipour acted with multiple schemes, goals, or plans in mind. Thus, because the SAC alleges only a singular

goal and acts committed against a singular victim, there is not the continuity required to constitute a "pattern" of racketeering activity under RICO. This lack of a pattern is fatal to Plaintiff's RICO claim. Accordingly, the RICO claim is **DISMISSED**.

### B. DTSA – Claim 16

Kazemipour next asks the Court to dismiss with prejudice Plaintiff's DTSA claim. Kazemipour argues that Plaintiff's DTSA claim should be dismissed because (1) Plaintiff fails to identify the disputed trade secrets with sufficient particularity and (2) Plaintiff fails to allege misappropriation of trade secrets. Kazemipour states that Plaintiff's categorical descriptions of the trade secrets are insufficient to satisfy the definition of a trade secret under 18 U.S.C § 1839(3). The Court agrees.

Under § 1839, a "trade secret" can be all forms and types of memorialized information if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id*. Plaintiff carries the burden of showing a trade secret exists. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993); *See also InteliClear, LLC v. ETC Glob. Holdings, Inc*. 978 F.3d 653, 658 (9th Cir. 2020). "Plaintiffs must 'clearly refer to tangible trade secret material' instead of referring to a 'system which potentially qualifies for trade secret protection.'" *InteliClear*, 978 F.3d at 658 (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998)). It is important for DTSA plaintiffs to identify trade secrets with sufficient particularity because defendants need to be put on proper notice to prepare rebuttal. *Id.* (finding evidence of a trade secret existed where there were specific tables, columns, codes, and methodologies alleged). "The court need not decide on a motion to dismiss whether some parts of the alleged trade secret may, after discovery, not qualify as a trade secret." *Navigation Holdings, LLC. v. Molavi*, 445 F. Supp. 3d 69, 76 (N.D. Cal. 2020). Rather, a Plaintiff must describe the alleged secret with sufficient detail to separate the trade secret from matters of general

knowledge. *Id.* The Court in *Navigation Holdings, LLC* found that a Plaintiff's description of a trade secret at the motion to dismiss stage satisfied the pleading standard where Plaintiff described their clientele and a general description of what was housed in the alleged databases at dispute. *Id.* at 77.

Plaintiff has failed to adequately allege what information related to the apps were trade secrets. Plaintiff merely recites the language of the statute in the SAC, stating the "plans, methods, programs, engineering plans, applications, designs (written and photographic), and formulas" related to the apps were secret because "no one but [Plaintiff] had access" to this information. [SAC ¶ 395]. Plaintiff does not provide any description of tangible trade secret material. Further, Plaintiff does not provide any detail regarding how he took reasonable measures to keep the information secret. Nor are there allegations concerning how the information provided to Kazemipour and the non-party app development company could derive "independent economic value." Plaintiff's SAC Exhibits G and H merely show screenshots of the two apps on the app store, with no specificity as to what aspect of the apps constitute trade secret information.[3] Because the Court finds that Plaintiff has not adequately pled any trade secret exists, the DTSA Claim is **DISMISSED.**

### C.     Remaining State Law Claims

Kazemipour argues that if the Fifteenth and Sixteenth Causes of Action are dismissed, there will no longer be original federal jurisdiction and this Court may decline to exercise supplemental jurisdiction. Having dismissed Plaintiff's federal claims, the Court's "decision of whether to exercise supplemental jurisdiction over the remaining state law claims 'is purely discretionary.'" *Couture v. Wells Fargo Bank, N.A.*, No. 11-CV-1096-IEG (CAB), 2011 WL 3489955, at *4 (S.D. Cal. Aug. 9, 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). The general rule in the Ninth Circuit is

---

[3] The Court notes that this DTSA claim only appears in the Second Amended Complaint, after Defendants brought two motions to dismiss addressing Plaintiff's sole federal claim under RICO.

when all "federal claims are dismissed before trial . . . pendant state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (quoting *Jones v. Community Redev. Agency*, 733 F.2d 646, 651 (9th Cir. 1984)).

Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, and this case is **DISMISSED** without prejudice. Any prospective motion for default judgment against 1792 Partners to be filed by Plaintiff will be dismissed as moot, as this Court no longer has jurisdiction over this case.

### D. Leave to Amend

Plaintiff requests the Court to grant leave to amend if it grants Defendant's motion to dismiss. The Ninth Circuit has found that a District Court's failure to grant leave to amend in a RICO claim is an abuse of discretion. *See Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986). Plaintiff, however, has filed three different complaints: original, first amended, and second amended. Additionally, Plaintiff admits he "has expended great efforts to address the arguments raised by Defendant in his previous motions [to dismiss]. . ." [Pl. Resp. at 6]. Each complaint got larger in size but did not provide substance, and Plaintiff fails to identify what else he could allege to overcome the deficiencies in his federal claims. Accordingly, the Court finds that any further amendment would be futile.

## VI. CONCLUSION

Plaintiff's RICO claim against Kazemipour is **DISMISSED** because Plaintiff does not allege that Kazemipour's actions constituted a "pattern" under RICO. Plaintiff's DTSA claim against both Defendants is **DISMISSED** because Plaintiff has failed to adequately plead that the information Defendants allegedly misappropriated were actual trade secrets. Because both federal claims in this case are dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, it is hereby **ORDERED** that the SAC is **DISMISSED** without prejudice to Plaintiff pursuing the state law claims in state court. The Clerk of Court shall **CLOSE** this case.

It is **SO ORDERED.**

Dated: December 15, 2022

_____
Hon. Cathy Ann Bencivengo
United States District Judge